# EXHIBIT

# B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| FREDERICK D. SHEPHERD, JR., | ) | CIVIL ACTION FILE |
| | ) | |
| Plaintiff, | ) | NO.   8:15-cv-04337-MGL |
| | ) | |
| v. | ) | |
| | ) | |
| COMMUNITY FIRST BANK, | ) | |
| RICHARD D. BURLESON, | ) | DEFENDANTS' ANSWERS TO |
| GARY V. THRIFT, DR. LARRY S. | ) | PLAINTIFF'S FIRST SET OF |
| BOWMAN, WILLIAM M. BROWN, | ) | INTERROGATORIES AND |
| JOHN R. HAMRICK, JAMES E. | ) | REQUESTS FOR PRODUCTION |
| TURNER, CHARLES L. | ) | OF DOCUMENTS |
| WINCHESTER, and ROBERT H. | ) | |
| EDWARDS, | ) | |
| | ) | |
| Defendants. | ) | |

COME NOW Defendants Community First Bank (hereinafter "CFB"), Richard D.

Burleson, Gary V. Thrift, Dr. Larry S. Brown, William M. Brown, John R. Hamrick, James E.

Turner, Charles L. Winchester, and Robert H. Edwards (collectively referred to as "Defendants"),

by and through counsel, and responds to Plaintiff's Discovery Requests ("Discovery Requests")

as follows:

<u>DISCOVERY REQUESTS</u>

1.    Give the names and addresses of persons known to you or your client to be

witnesses concerning the facts of the case and indicate whether or not written or recorded

statements have been taken from the witnesses and indicate who has possession of these

statements.

ANSWER:    Defendants object to Discovery Request No. 1 on the grounds and to the

extent it seeks to invade the attorney-client privilege and attorney work product privilege and to

the extent it is requesting information known to counsel and/or written or recorded statements

taken by counsel. Subject to the foregoing specific objections, Defendants respond as follows:

Frederick D. Shepherd, Jr.
John Michael Powell
James E. McCoy
Representatives of MPS Golf Course, Inc.
Representatives of MPS Development, Inc.
Benjamin Hiott
Richard Burleson - CFB
Victor Grout - CFB
William West – CFB
Carol Wilson – CFB
Sandy Gravely - CFB
Chase Christopher - CFB
David Peters, formerly of CFB
Representatives of Blue Ridge Bank
Representatives of South State Bank
Representatives of Oconee Federal Savings and Loan
Patrick M. Erwin / Gary T. Duncan
Donald Jones, Palmetto Consulting
Gary V. Thrift
Dr. Larry S. Bowman
William M. Brown
John R. Hamrick
James E. Turner
Charles L. Winchester
Robert H. Edwards
Current and Former members of Community First's Loan Committee
Current and Former members of Community First's Board of Directors

All individuals other than Mr. Powell, Mr. McCoy, Mr. Shepherd, Mr. Hiott, Mr. Peters,

Mr. Jones, Mr. Erwin, and Mr. Duncan and the representatives of other institutions may be

contacted through counsel. Defendants reserve the right to supplement this discovery response as

discovery proceeds.

2.    Set forth a list of photographs, plats, sketches, contracts, or other prepared documents in possession of the party that relate to the claim or the defense of this case. Produce all documents.

ANSWER:    Defendants respond as follows:

Defendants object to Discovery Request No. 2 on the grounds that providing a list of multiple thousands of pages of documents is not proportional to the claims and defenses in the lawsuit. Any non-privileged documents responsive to this Discovery Request that are currently in Defendants' possession, custody or control will be produced.

3.    Set forth the names and addresses of all insurance companies which have liability coverage relating to the claim, and set forth the number or numbers of the policies involved and the amount of liability insurance coverage provided in each policy. Produce each insurance contract identified.

ANSWER:    Defendants respond that Community First Bancorporation is party to a contract of insurance with Continental Casualty Company in the amount of $1,000,000, Policy No. 596462184. A copy of the relevant policy will be produced.

4.    List the names of any expert witnesses whom the party proposes to call as witnesses at the trial of the case. As to each expert witness provide the following information:

    a.    Produce all documents provided to the expert.

    b.    Produce a copy of the expert's CV.

    c.    Produce copies of all bills submitted by the expert for services rendered.

    d.    Set forth the basis of payment of the expert, e.g. hourly rate, retainer, etc.

    e.    Produce any and all documents in the possession of the expert that relate to

3

the opinions rendered, including all of the expert's notes, memorandums, computations, and drawings.

f.      Produce all written reports or documents in which the experts opinions and basis of opinions are contained.

g.      If there are no written reports or documents containing the experts opinions and basis for opinions then give all opinions to which you expect this expert to testify and the factual basis for each opinion.

ANSWER:     Defendants object to Discovery Request No. 4 on the grounds and to the extent it calls for the identification of expert witnesses prior to the time designated in the court's Pretrial Discovery Order.  Additionally, Defendants have not yet determined what experts they will call to testify at the trial of this matter.  Defendants reserve the right to supplement this response.

5.      For each person known to the parties or counsel to be a witness concerning the facts of the case, set forth either a summary sufficient to inform the other party of the important facts known to or observed by such witness, or provide a copy of any written or recorded statements taken from such witness.

ANSWER:     Defendants object to Discovery Request No. 5 on the grounds and to the extent it seeks to invade the attorney-client privilege and attorney work product privilege and to the extent it is requesting information known to counsel and/or written or recorded statements taken by counsel.  Subject to the foregoing specific objection, Defendants respond as follows:

Frederick D. Shepherd, Jr.:  Defendants believe that Shepherd possesses information regarding the extent to which he was a business partner of John Powell and James McCoy, the extent to which he failed and refused to disclose to CFB personnel, including in particular,

4

members of the Loan Committee and members of the Board of Directors, that various loans made to John Powell were for his or James McCoy's direct or indirect benefit, that various lending decisions, including the renewal and charge-off of such loans, were made for his direct or indirect benefit, that he executed various documents for Powell and others related to Powell loans, and that he may have been involved in other conduct related to Powell, McCoy or other parties that impact his entitlement to payments under the Plan. Defendants also believe Shepherd has knowledge regarding formation and execution of the Plan, compliance with FDIC obligations regarding the Plan, and entitlements to payments. Defendants reserve the right to supplement this response as discovery proceeds.

John Michael Powell: Defendants believe that Powell possesses information regarding the extent to which he was a business partner of James McCoy and Frederick Shepherd, the extent to which he failed and refused to disclose to CFB that various loans made to him were for Shepherd's or McCoy's direct or indirect benefit and that various lending decisions, including renewal and charge-off of such loans, were made for the direct or indirect benefit of Shepherd or McCoy. Defendants believe Mr. Powell will provide information that several CFB documents which purport to bear his signature were not, in fact, signed by him. Defendants reserve the right to supplement this response as discovery proceeds.

James E. McCoy: Defendants believe that McCoy possesses information regarding the extent to which he was a business partner of John Powell and Frederick Shepherd, the extent to which he failed and refused to disclose to CFB personnel, including in particular, members of the Loan Committee and members of the Board of Directors, that various loans made to John Powell or McCoy or others were for Shepherd's direct or indirect benefit and that various lending decisions, including renewal and charge-off of such loans, were made for his direct or indirect

5

benefit.  Defendants reserve the right to supplement this response as discovery proceeds.

Representatives of MPS Golf Course, Inc.:  Defendants believe that representatives of MPS Golf Course, Inc. have or will have information regarding the use of funds obtained and derived from CFB, the extent to which Shepherd, Powell and McCoy were business associates in such company, the extent to which proceeds of loans and other funds were used among the three partners in general matters regarding the business of MPS Golf.

Representatives of MPS Development, Inc.:  Defendants believe that representatives of MPS Development, Inc. has or will have information regarding the use of funds obtained and derived from CFB, the extent to which Shepherd, Powell and McCoy were business associates in such company, the extent to which proceeds of loans and other funds were used among the three partners in general matters regarding the business of MPS Development.

Benjamin Hiott:  Defendants believe that Mr. Hiott has information regarding the business relationship between the Defendants, including his personal participation in moving funds between and among the Defendants.  Defendants believe Mr. Hiott may have information to the effect that loans and other lending decisions nominally for the benefit of Powell or others were actually, directly or indirectly, for the benefit of Shepherd.  Defendants further believe Mr. Hiott may have information regarding his activities that benefitted MPS Golf and MPS Development for the ultimate benefit of Shepherd.

Richard Burleson:  Mr. Burleson has knowledge regarding the investigation of the Powell loans at issue in the lawsuit, various conversations with Mr. Powell regarding the extent to which the loans were for the benefit of Shepherd and the extent to which documents related to said loans were not signed by Powell.  Mr. Burleson further has knowledge regarding the investigation to the extent Shepherd was the beneficiary of the loans to Powell and others and Shepherd's participation

in the loans. Mr. Burleson has knowledge regarding the decision to stop payments of the Plan and FDIC issues related to the Plan.

Victor Grout: Mr. Grout has knowledge regarding the investigation of the loans at issue in the lawsuit. Mr. Grout participated in one conversation with Mr. Powell regarding the extent to which documents related to said loans were not signed by Powell. Mr. Grout further has knowledge regarding the investigation to the extent Shepherd were the beneficiary of the loans to Powell and to others.

Carol Wilson / Sandy Gravely: Ms. Wilson and Ms. Gravely assisted Mr. Grout in the investigation of the Powell loans.

William West: Mr. West has knowledge regarding the investigation of the Powell loans at issue in the lawsuit. Mr. West participated in one conversation with Mr. Powell regarding the extent to which the Powell loans at issue were for the benefit of Shepherd and McCoy and the extent to which documents related to said loans were not signed by Powell. Mr. West further has knowledge regarding the investigation to the extent Shepherd was the beneficiary of the loans to Powell and others and Shepherd's participation in these loans. Mr. West has knowledge regarding the decision to stop payments of the Plan and FDIC issues related to the Plan.

Chase Christopher: Mr. Christopher has knowledge regarding the investigation of the Powell loans at issue in the lawsuit, various conversations with Mr. Powell regarding the extent to which the loans were for the benefit of Shepherd and McCoy and the extent to which documents related to said loans were not signed by Powell. Mr. Christopher further has knowledge regarding the investigation to the extent Shepherd was the beneficiary of the loans to Powell. Mr. Christopher has knowledge regarding conversations with Mr. Powell in which he segregated various Powell loan documents into two piles, one which Powell acknowledged signing and the

other in which he could not confirm that he signed.

David Peters: Defendants believe David Peters, former Credit Administrator of CFB, may have knowledge of the business relationship between James McCoy, Frederick Shepherd and John Powell, the extent to which various loans nominally made to Powell were for Shepherd's direct or indirect benefit, and that various lending decisions regarding such loans were made for the direct or indirect benefit of Shepherd. Defendants reserve the right to supplement this response as discovery proceeds.

Donald Jones/Palmetto Consulting: Mr. Jones and Palmetto Consulting were engaged to investigate the activities of Benjamin Hiott that were believed to constitute embezzlement. During the investigation, Jones investigated Hiott's activities related to MPS Golf and MPS Development.

Representatives of South State Bank: Defendants believe that representatives of South State Bank would have information regarding the transfer of funds in and out of various accounts maintained by South State Bank by Shepherd, Powell, McCoy, MPS Golf and MPS Development.

Representatives of Blue Ridge Bank: Defendants believe that representatives of Blue Ridge Bank would have information regarding the transfer of funds in and out of various accounts maintained by Blue Ridge Bank by Shepherd, Powell, McCoy, MPS Golf and MPS Development.

Representatives of Oconee Federal Savings and Loan. Defendants believe that representatives of Oconee Federal Savings and Loan would have information regarding the transfer of funds in and out of various accounts maintained by Oconee Federal Savings and Loan by Shepherd, Powell, McCoy, MPS Golf and MPS Development.

Patrick M. Erwin / Gary T. Duncan: Defendants believe that Mr. Erwin and/or Mr. Duncan would have information regarding the transfer of funds among the Defendants.

Members of the Loan Committee and Board of Directors have information regarding their

individual knowledge of the extent to which Shepherd, Powell and McCoy were business associates and the extent to which lending decisions nominally for John Powell were actually for the direct or indirect benefit of Shepherd. Current members of the Board of Directors have knowledge of the decision to terminate Shepherd's Plan payments.

6.    Describe any and all statements previously made by the Plaintiff, through its agents, servants, and/or employees, concerning the subject matter of the lawsuit, including any written or recorded statement signed or otherwise adopted by the Plaintiff. If there are written or recorded statements produce copies.

ANSWER:    Defendants object to Discovery Request No. 6 on the grounds that it is vague and ambiguous in that it requests statements "previously made" which is indefinite as to time. Defendants are aware of multiple statements made by Plaintiff regarding the Salary Continuation Plan both prior to its adoption in 2007 through and including the date of these Responses whether through counsel or otherwise, related to Plaintiff's entitlement to payment, Defendant Community First's accrual of benefits for purposes of making payment, and Defendant's decision to stop making payments to Plaintiff. Subject to the foregoing specific objections, Defendants will provide any written statements regarding the subject matter of the lawsuit by Plaintiff but does not believe any such statements exist.

7.    Describe any and all statements previously made by any of the Defendants concerning the subject matter of the lawsuit, including any written or recorded statement signed or otherwise adopted by the Defendants. If there are written or recorded statements produce copies.

ANSWER:    Defendants object to Discovery Request No. 7 on the grounds that it is

9

vague and ambiguous in that it requests statements "previously made" which is indefinite as to time. Some of the Defendants have made multiple statements regarding the Salary Continuation Plan both in connection with its adoption in 2007 through and including the date of these Responses whether through counsel or otherwise, related to Plaintiff's entitlement to payment, Defendant Community First's accrual of benefits for purposes of making payment, and Defendants' decision to stop making payments to Plaintiff. Defendants have also made statements regarding Plaintiff's conduct or misconduct as CEO of Defendant Community First. Subject to the foregoing specific objections, Defendants will produce any non-privileged written statements regarding the subject matter of the lawsuit by Defendants but does not believe any such documents exist.

8.    If any person(s) has provided, or prepared, Affidavit(s), whether executed or not, relating to any aspect of this action, identify the person(s) providing the Affidavit(s) and produce copies.

ANSWER:    Not applicable.

9.    Produce all documents relating to the investigation, research, negotiations, and formation of the Salary Continuation Plan. This request would include but not be limited to:

a)    All documents relating to the meetings of the Board of Directors or any committee of the Defendant Bank, inclusive of meeting minutes, notes, memorandums, and/or handouts;

b)    All correspondence, memos, research, handouts, or other documents;

c)    All documents relating to discussions, investigations, and/or research of

Plans and/or the Plan and all discussions, informal meetings of bank

employees, Board of Directors, or Plan Administrators;

d)    Documents relating to all consultations and/or involvement of parties

outside of the Defendants' employees, agents, or servants relating to the

purpose, drafting, and finalization of the Plan.

ANSWER:    Defendants object to Discovery Request No. 9 on the grounds and to the

extent it seeks to invade the attorney client privilege and the attorney work product privilege.

Subject to the foregoing specific objection, individual Defendants respond that they have no such

documents and Community First responds that it will produce non-privileged documents within

its possession, custody or control that it can locate.

10.    Produce all documents concerning the execution, signing, or finalization of the

Salary Continuation Plan, including, but not limited to:

a)    All documents relating to the meetings of the Board of Directors or any

committee of the Defendant Bank, inclusive of meeting minutes, notes,

memorandums, and/or handouts;

b)    All correspondence, memos, research, handouts, or other documents;

c)    All documents relating to discussions, investigations, and/or research of

the Plan and all discussions, informal meetings of bank employees, Board

of Directors, or Plan Administrators and its execution, signing, or

finalization;

11

    d)      Documents relating to all consultations and/or involvement of parties outside of the Defendants' employees, agents, or servants relating to the purpose, drafting, and finalization of the Plan.

ANSWER:    Defendants object to Discovery Request No. 10 on the grounds and to the extent it seeks to invade the attorney client privilege and the attorney work product privilege. Subject to the foregoing specific objection, individual Defendants respond that they have no such documents and Community First responds that it will produce non-privileged documents within its possession, custody or control that it can locate.

11.    Did the Bank purchase any bank owned life insurance (BOLI) on the lives of Shepherd and/or other bank employees within a year before or after the execution/signing of the Plan? If so,

    a)      Provide details on the amounts and life or lives insured;

    b)      Provide a full accounting of the payments made, the return on investment, and the allocation/use of those funds;

    c)      Did the Bank informally use or assign the return on investment of the BOLI to offset the costs of the Plan? If so, provide all details;

    d)      What was the net cost to the Bank for the accrual of funds for the Plan if the cost was offset by the tax free return on investment in the BOLI?

    e)      Does the Bank still own life insurance on Shepherd? If so, what is the current cash value and the death benefit;

    f)      Is there any split dollar life insurance benefit to Shepherd's beneficiaries? If so, how much?

g)    Produce all documents.

ANSWER:    Defendants object to Discovery Request No. 11 on the grounds that it is not relevant to any claim or defense in the lawsuit and is otherwise non-proportional to the needs of the case.  Defendants further object to Discovery Request No. 11 in that it seeks information regarding bank employees other than Plaintiff and therefore for that additional reason seeks information that is not relevant to the claims and defenses nor is it proportional to any consideration of said issues.  Subject to the foregoing specific objection, the individual Defendants respond they have no such documents and Community First responds that it will produce non-privileged documents within its possession, custody or control regarding Plaintiff, and to that extent states that the Bank purchased bank-owned life insurance on the life of Shepherd and that it still owns said policy.

12.    Produce all documents relating to the implementation and administration of a Salary Continuation Plan from the date of signing in 2007 through present, including, but not limited to:

a)    All documents relating to the meetings of the Board of Directors or any committee of the Defendant Bank, inclusive of meeting minutes, notes, memorandums, and/or handouts;

b)    All correspondence, memos, research, handouts, or other documents;

c)    All documents relating to discussions, investigations, and/or research of the Plan and all discussions, informal meetings of bank employees, Board of Directors, or Plan Administrators;

13

     d)     Documents relating to all consultations and/or involvement of parties outside of the Defendants' employees, agents, or servants relating to the purpose, drafting, and finalization of the Plan.

ANSWER:    Defendants object to Discovery Request No. 12 on the grounds and to the extent it seeks to invade the attorney client privilege and the attorney work product privilege. Subject to the foregoing specific objection, individual Defendants respond that they have no such documents and Community First responds that it will produce non-privileged documents within its possession, custody or control that it can locate.

13.    Produce all documents concerning involvement and/or decisions of any regulatory agency concerning the Salary Continuation Plan, including, but not limited to:

     a)     All documents sent to or received from any regulating agency;

     b)     All documents prepared, considered, or used relating to regulatory agencies;

     c)     All documents relating to actions/involvement of regulatory agencies, meetings of the Board of Directors or any committee of the Defendant Bank, inclusive of meeting minutes, notes, memorandums, and/or handouts;

     d)     All correspondence, memos, research, handouts, or other documents;

     e)     All internal discussions, investigations, and/or research relating to the Plan and the involvement and/or discussion of any regulatory agency;

14

    f)     All consultations and/or involvement of parties outside of the Defendants' employees, agents, or servants relating to the purpose, drafting, and finalization of the Plan.

ANSWER:   Defendants have no such documents.

14.    Produce all documents concerning any reviews, investigations, requests for opinions, and/or legal analysis concerning the Salary Continuation Plan, including, but not limited to:

    a)     All documents submitted to the Bank, Board of Directors, or Plan Administrators or sent from the Bank, Board of Directors, or Plan Administrators;

    b)     All documents relating to the meetings of the Board of Directors or any committee of the Defendant Bank, inclusive of meeting minutes, notes, memorandums, and/or handouts;

    c)     All correspondence;

    d)     All internal discussions, investigations, and/or research relating to review, meetings in regard to opinions and/or legal analysis concerning the Plan;

    e)     Documents relating to all consultations and/or involvement of parties outside of the Defendants' employees, agents, or servants relating to the review, meetings in regard to opinions and/or legal analysis concerning the Plan.

ANSWER:   Defendants object to Discovery Request No. 14 on the grounds and to the extent it seeks to invade the attorney client privilege and the attorney work product privilege.

Subject to the foregoing specific objection, individual Defendants respond that they have no such documents and Community First responds that it will produce non-privileged documents within its possession, custody or control.

15.    All documents concerning decisions to reduce, suspend, or terminate payments under the Salary Continuation Plan by either the Bank, Board of Directors and/or the Plan administrators, including, but not limited to:

    a)    All documents submitted to the Bank, Board of Directors, or Plan Administrators or sent from the Bank, Board of Directors, or Plan Administrators;

    b)    All documents relating to the meetings of the Board of Directors or any committee of the Defendant Bank, inclusive of meeting minutes, notes, memorandums, and/or handouts;

    c)    All correspondence;

    d)    Documents relating to all internal discussions, investigations, and/or research relating to reduction, suspension, or termination of benefits;

    e)    All consultations and/or involvement of parties outside of the Defendants' employees, agents, or servants relating to the purpose, drafting, and finalization of the Plan relating to reduction, suspension, or termination of benefits.

ANSWER:    Defendants object to Discovery Request No. 15 on the grounds and to the extent it seeks to invade the attorney client privilege and the attorney work product privilege. Subject to the foregoing specific objection, individual Defendants respond that they have no such

documents and Community First responds that it will produce non-privileged documents within its possession, custody or control.

16.     Produce all documents requested by or submitted to the Bank, Board of Directors, and/or Plan Administrators relating to the rights and obligations of the Defendants in connection with the Salary Continuation Plan, reduction of benefits, suspension or termination of benefits.

ANSWER:     Defendants object to Discovery Request No. 16 on the grounds that it is vague and ambiguous in that it is not specific as to time and therefore it is not proportional to the issues in claims and defenses in this lawsuit. Defendants further object to Discovery Request No. 16 on the grounds and to the extent it seeks to invade the attorney client and attorney work product privileges.

17.     Identify by date all votes taken by the Board of Directors and/or the Plan Administrators relating to the Salary Continuation Plan. As to each date that a vote was taken, provide the following information:

        a)     The reason or reasons for the vote;

        b)     The vote totals;

        c)     The actual vote taken by each individual;

        d)     All actions specifically taken as a result of that Note.

ANSWER:     Defendants object to Discovery Request No. 17 on the grounds that it is not proportional to claims or issues to be decided in this matter and because it is unlimited as to time and to scope. Subject to the specific objections, Defendants respond that:

        a)     On or about May 20, 2015 by unanimous vote, the Board of Directors of

17

Community First decided to stop making payments to Plaintiff under his Salary Continuation Plan and authorized Robert Singer to write a letter to Plaintiff explaining the Board's decision.

b)    On or about March 3, 2007, the Board of Directors of Community First Bank approved the Salary Continuation Plan agreement between Plaintiff and Community First Bank.

18.    Produce all documents concerning the accrual of funds by the Bank pursuant to the Salary Continuation Plan. If not included in documents, prepare and provide a complete accounting of all those funds.

ANSWER:    The individual Defendants respond that they have no such documents. Defendant Community First Bank will produce non-privileged responsive documents within its possession, custody or control.

19.    State the full and complete basis for each and every reason in support of the Defendants' decisions in regard to the following:

a)    To suspend payments;

b)    To reduce payments;

c)    Produce all documents.

ANSWER:    Defendants object to Discovery Request No. 19 in the grounds and to the extent it seeks to invade the attorney client and attorney work product privileges and on the grounds and to the extent that it is premature to the extent that other bases may be discovered through the course of discovery in this lawsuit which support Defendants decisions to suspend or reduce payments to Plaintiff pursuant to the Plan. Subject to the specific objection, Defendants respond

that the bases for suspending payments and the bases for reducing payments were outlined in the letter of Robert A. Singer dated May 26, 2015. Individual Defendants have no such documents. Defendant Community First Bank will produce non-privileged responsive documents within its possession, custody or control.

20.    Identify each and every investigation, inquiry, or analysis, either by the Defendants or of which the Defendants are aware that relate in any way to any alleged wrongdoing or misconduct by the Plaintiff during his employment with the Defendant Community First Bank. As to each one provide:

        a)    The date commenced;

        b)    Identify all parties involved;

        c)    The results;

        d)    The action/actions taken;

Produce all documents as to each and every investigation, inquiry, or analysis.

ANSWER:    Defendants object to Discovery Request No. 20 on the grounds and to the extent it seeks to invade the attorney client and attorney work product privileges.

1)    On or about September 3, 2013, Defendant Community First engaged Palmetto Consultants to perform an investigation of various claims regarding Benjamin Hiott which investigation may have a bearing on potential misconduct by Plaintiff. The focus of the investigation was on Hiott's embezzlement and therefore no conclusion was reached regarding Plaintiff.

2)    In spring 2015, Victor Grout was asked to conduct an independent investigation of the $810,000 loan owing from John Powell to Community First. Mr. Grout's work led to the potential conclusion that Plaintiff had violated Regulation O as it

related to the use of the proceeds of the loans that made up the $810,000 loan from Mr. Powell. A similar investigation was conducted with respect to loans to James E. McCoy. The result of that investigation is not concluded but preliminary indications are that the loans to Mr. McCoy may also involve Regulation O violations by Plaintiff.

3)    Counsel for Defendants are continuing to engage in investigations, the result of which are privileged.

21.    Provide a full accounting of all funds withheld from payment to the Plaintiff. Produce all documents.

ANSWER:    See response to Document Request No. 18.

22.    To the extent not already produced, produce all documents submitted to or in the possession of the Bank, members of the Board of Directors, or the Plan Administrators that relate in any way to the Salary Continuation Plan and the issues relevance the pending litigation.

ANSWER:    See prior objections in Responses.

James C. Adams, II  (N.C. Bar # 18063)
*jadams@brookspierce.com*
Justin N. Outling  (N.C. Bar # 38409)
*joutling@brookspierce.com*
BROOKS, PIERCE, McLENDON,
    HUMPHREY & LEONARD, L.L.P.
P.O. Box 26000
Greensboro, NC 27420
Tel:    336-373-8850
Fax:    336-378-1001
*Admitted Pro Hac Vice on behalf of Defendants*

Date: 3/2/16

David R. Price, Jr. (S.C. Bar # 75140)
**DAVID R. PRICE, JR., P.A.**
318 West Stone Avenue (29609)
Post Office Box 2446
Greenville, South Carolina 29602-2446
(864) 271-2636 office
(864) 271-2637 fax
David@GreenvilleLegal.com
*Attorneys for Plaintiff*